1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH ANN HILL, | ) 1:05cv1018 AWI DLB |
| | ) |
| | ) |
| | ) FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Ruth Ann Hill ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

1

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application for supplemental security income on August 23, 2003.  AR 120-122.  She alleged disability since August 22, 2003, due to pain on the right side of her head, and numbness and tingling in her right arm.  AR 199.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 72-75, 82-86, 93.  On January 6, 2005, ALJ Michael Haubner held a hearing.  AR 409-457.  ALJ Hoffman denied benefits on November 9, 2005.  AR 13-25.  On July 22, 2005, the Appeals Council denied review.  AR 7-11.

Hearing Testimony

On January 6, 2005, ALJ Haubner held a hearing in Fresno, California.  Plaintiff appeared without an attorney.[2]  Vocational expert ("VE") Judith Najaran also appeared and testified.  AR 409.

Plaintiff testified that she was 48 years old at the time of the hearing.  She has a certificate from the police academy for completion of a correctional officer's training course, as well as certificate for legal secretary work.  AR 421-422.  She has previously worked as an administrative assistant, restaurant hostess, correctional officer, office assistant, hospital admitting clerk, receptionist, and in data entry.  AR 423-427.  She has not worked since 2002.  AR 426.

Plaintiff lives with her two daughters, ages 12 and 15, in a second floor apartment.  AR 429.  She has a driver's license and drives at least once a day.  She goes shopping every two days, goes to church once a week, and attends a Bible study once a week after church.  AR 430.  She does laundry every two days, cooks once every two days, and does simple meal preparation about once a day.  AR 431.  She does dishes once every two days, but does not sweep, vacuum, mop, dust, take out the trash or do windows.  AR 432.  When asked what she did all day, she

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] At the beginning of the hearing, the ALJ confirmed that Plaintiff was aware of her right to representation and wished to proceed without a representative.  AR 411.

responded that she reads her Bible for about two hours and watches television for about two hours.  AR 432.  She talks on the phone for about an hour a day.  AR 433.

Plaintiff thought she could lift and carry five pounds, could sit for 45 minutes at a time and could stand for about half an hour.  AR 433-434.  She thought she could walk for three-quarters of a mile.  AR 434.

Plaintiff testified that Dr. Fernandez told her she had fibromyalgia about four years ago.  AR 434.  When asked if her fibromyalgia, ischemic attacks, hypothyroidism, and obesity were the only conditions that kept her from working, Plaintiff explained that she also suffered from severe depression, edema in both her legs, a heart arrhythmia, a tumor in her right kidney, and two cystic tumors in her left breast.  AR 435.  Plaintiff further testified that she has problems falling asleep and difficulty staying asleep.  AR 435.  She thought she slept about three hours in a 24 hour period.  AR 436.

Plaintiff explained that she does not get along with people because she is "highly suspicious, distrusting, angry, hurt."  AR 436.  She sees a social worker twice a week for mental health treatment.  AR 436-437.  She had been taking an anti-depressant for about one month.  AR 438.

She later explained that although she is enrolled in Sunday School, she has not been in a couple of years.  AR 439.  Her depression causes problems sleeping, problems getting along with others, and weight gain.  AR 439.  She has difficulty concentrating or paying attention, and estimated that she could concentrate for about 15 minutes at a time.  AR 440.

Plaintiff also testified that she has Epstein Bar Virus, which she believes she contacted from a shot received from the Sheriff's Department.  AR 440.  She also indicated that she has an upcoming biopsy.  AR 441.

_____For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally do overhead lifting but should avoid pushing and pulling greater than 30 pounds with the right upper extremity.  This person could perform all of Plaintiff's past relevant work, except for correctional officer, as well as unskilled, sedentary work.  AR 447.

This person could perform some light work, with a 25 percent reduction for overhead lifting.  AR 448.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally climb ladders, ropes and scaffolds, could occasionally crawl, but had to avoid all overhead reaching with the dominant, right upper extremity.  This person also had to avoid concentrated exposure to unprotected heights and dangerous machinery.  AR 450.  This person could perform Plaintiff's past relevant work in data entry, and as a hospital admitting clerk and receptionist.  This person could also perform work at the sedentary level, and at the light level with a 60 percent reduction.  AR 452.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry five pounds frequently and occasionally, could sit for 45 minutes at a time, stand for half an hour, walk three-quarters of a mile, and concentrate for 15 minute blocks.  AR 452.  This person could not perform any work.  AR 452.

When the ALJ asked if he included all of her limitations, Plaintiff indicated that she also has numbness and some paralysis on the right side of her body, including her right hand and arm, and therefore she couldn't hold onto anything.  AR 453.  The ALJ responded that he saw her carrying things with her right hand, and Plaintiff admitted that she could use her right hand a little.  For example, she could write with her right hand for about five minutes.  If this limitation was added to hypothetical number three, this person would still be unable to perform any work.  AR 453-454.  If Plaintiff had difficulty interacting with coworkers, supervisors and the general public, as she testified, she could not perform any work.  AR 456.

       Medical Evidence

An April 4, 2001, ultrasound of Plaintiff's thyroid revealed hypothyroidism.  The lobes were diminished in size, but there were no masses.  AR 296.

On June 5, 2001, Plaintiff called her doctor and indicated that she was feeling sluggish, her hands were falling asleep, and that she was losing eyelashes and hair.  AR 284.

On August 21, 2001, Plaintiff saw Chimmapa R. Nareddy, M.D., for an internal medicine evaluation.  Plaintiff's chief complaint was severe thyroid disease, and she complained of feeling weak and lethargic all the time.  Although tests after her diagnosis of hypothyroidism showed normal levels, Plaintiff was "not satisfied" and continued to have problems.  Upon examination, Plaintiff appeared to be mildly depressed, but was in no other distress.  Her thyroid was not enlarged and was nontender.  Her heart tones were of good quality, with no murmurs, thrills or rubs.  There was no tenderness to palpation in her chest, abdomen or back.  Straight leg raising was negative and range of motion in her upper and lower extremities was within normal limits.  Neurological examination revealed that Plaintiff had good tone bilaterally with good active motion.  Her strength was 5/5 in all extremities and sensory was grossly intact.  She could walk normally with no assistive device.  Dr. Nareddy diagnosed hypothyroidism, menopausal secondary to hysterectomy, and depression, most likely reactive.  Dr. Nareddy further opined that there were no objective findings on which to base any physical restrictions.  AR 264-268.

A CT scan of Plaintiff's head was done on August 22, 2003, and was normal.  AR 281.  A chest x-ray was also done to rule out congestive heart failure, and was unremarkable.  AR 280.

Plaintiff saw Trilok S. Puniani, M.D., for a neurological consultation on September 3, 2003.  Plaintiff explained that while sitting at her desk at work on August 22, 2003, she experienced severe right-sided head pain, along with nausea and blurred vision.  Over the next few days, a throbbing sensation appeared in her right arm.  On examination, Plaintiff had decreased sensation on the right side with definite midline splitting.  Dr. Puniani diagnosed an episode of right paroxysmal cephalgia, probably migrainous cephalia, episodic tension headaches, and parathesias of the right upper extremity, unclear etiology.  Dr. Puniani discussed his findings with Plaintiff, who remained "somewhat convinced" that she had a stroke.  Dr. Puniani indicated that Plaintiff seemed to have an adjustment disorder and underlying depression and referred her to Behavior Medicine.  Plaintiff requested a second opinion.  AR 276-277.

On September 2, 2003, Dr. Mendoza indicated that Plaintiff should be off work until September 16, 2003.  AR 278.

On September 19, 2003, Plaintiff saw Dr. Fernandez and complained of continuing headaches and nausea.  She indicated that she did not believe she could go back to work.

On September 30, 2003, Plaintiff saw Dr. Fernandez and complained of a headache and pain in the right side of her face and arm while at work on August 22, 2003.  Dr. Fernandez diagnosed work stress and impingement of her right shoulder.  AR 271.  Dr. Fernandez discussed Plaintiff's case with Dr. Kirsten, the head of the psychiatry department.  Dr. Kirsten indicated that the injury was not work-related and that Plaintiff should be returned to full duty.  AR 271.  Pursuant to this recommendation, Dr. Fernandez indicated that Plaintiff could return to work with restrictions, and that she should follow up with her primary physician.  AR 272.

On November 9, 2003, Plaintiff saw Frank Wilson, Jr., M.D., for a psychiatric evaluation.  Her chief complaint was loss of memory.  She indicated that she could not work because of the pain on the right side of her head.  Plaintiff further indicated that she had a work-related stroke in August 2003 and that her doctor ordered her to stop working.  On mental status examination, Plaintiff was pleasant with an inappropriately bright affect.  The examination did not reveal any neurological damage.  Dr. Wilson diagnosed histrionic personality traits, and opined that Plaintiff could maintain attention and concentration, and could carry out one or two step, simple job instructions.  She could relate and interact with coworkers, supervisors and the general public, and could carry out an extensive variety of technical and/or complex instructions on a sustained basis.  However, due to her personality disorder and her age of 46, Dr. Wilson opined that Plaintiff would have a great deal of difficulty integrating into the work place with her limited skills.  AR 309-311.

On November 13, 2003, Plaintiff saw Naeemah H. Ghafur, M.D., for an internal medicine evaluation.  She complained of constant pain on the right side of her body, especially in her arm and leg, and numbness and tightness of her skin.  Upon examination, there was no tenderness in her abdomen, chest or back, and range of motion in all joints was within normal limits.  Motor strength in her right upper extremity was 3/5, grip bilaterally was 5/5.  There was no muscle atrophy and sensory was grossly intact.  He diagnosed a history of multiple TIAs, atypical chest pain, hypothyroidism with a history of toxic goiter, overweight, and alopecia.  He opined that she

1  could lift 20 pounds occasionally and 10 pounds frequently, occasionally perform overhead

2  lifting, and push/pull up to 30 pounds with her upper extremities.  AR 312-316.

3         On December 15, 2003, State Agency physician Sadda Reddy, M.D., completed a

4  Physical Residual Functional Capacity Assessment.  Dr. Reddy opined that Plaintiff could

5  occasionally lift and carry 20 pounds, ten pounds frequently, could stand and/or walk for about

6  six hours in an eight hour workday, and could sit for about six hours in an eight hour workday.

7  Plaintiff could not forcefully push or pull with her right upper extremity.  She could frequently

8  climb ramps and stairs, balance, stoop, kneel, and crouch, and could occasionally climb ladders

9  and crawl.  Plaintiff would be limited in reaching in all directions with her right shoulder, and

10  could not perform overhead reaching with the right upper extremity.  Plaintiff would have to

11  avoid concentrated exposure to hazards and avoid working at unprotected heights and near

12  dangerous machinery.  AR 351-358.  These findings were affirmed on April 15, 2004.  AR 358.

13         Blood testing in February 2004 showed that Plaintiff tested positive for Epstein Barr

14  virus.  AR 327.

15         Plaintiff saw Sam A. Borno, M.D., on February 25, 2004, for an echocardiogram.  The

16  test was normal and demonstrated only mild mitral and mild tricuspid regurgitation.  While in the

17  office, Plaintiff became very nauseous and complained of vertigo.  Her pulse was strong,

18  palpable and full, and Dr. Borno assured her that it was unlikely cardiac-related.  AR 317.

19         In March 2004, Emmanuel Conanan, M.D, prepared a form for State Disability Insurance.

20  He indicated that he began treating Plaintiff in December 2003, and that she has a history of

21  Epstein Barr virus and hypothyroidism.  He believed her disability commenced on December 15,

22  2003, and should end on December 15, 2004, "per patient's report."  AR 325-326.

23        On March 27, 2004, Plaintiff underwent a consultive examination by Steven Stoltz, M.D.

24  Plaintiff indicated that she had a "mini-stroke" while at work on August 22, 2003, and since then,

25  has had memory difficulties, right-sided weakness and pain on the right side of her body.  She

26  reported that she has been recently diagnosed with fibromyalgia.  On examination, Plaintiff had

27  numerous tender points consistent with fibromyalgia, decreased grip strength of the right hand

28  with full ability to raise her right arm above the head.  Her right leg, while seated, showed some

1   decreased strength with hip flexion, knee extension and ankle plantar and dorsiflexion, but she

2   stood without difficulty.  Dr. Stoltz diagnosed Plaintiff with fibromyalgia, history of

3   hypothyroidism, and questionable transient ischemic attacks by history.  He opined that Plaintiff

4   had no typical risk factors for cerebrovascular disease and it was more likely symptoms of

5   fibromyalgia.  He stated Plaintiff could return to work on June 3, 2004.  AR 378-379.

6          On April 4, 2004, a State Agency physician completed a Mental Residual Functional

7   Capacity Assessment and opined that Plaintiff was moderately limited in the ability to

8   understand, remember and carry out detailed instructions.  Plaintiff was capable of understanding

9   and remembering very simple, one to two-step tasks, and could sustain concentration and

10  persistence to perform very short and simple instructions consistently.  Plaintiff would not

11  require more than the usual supervision and would be able to interact with others in the

12  workplace.  She would adapt to normal workplace changes without difficulty.  AR 331-333.

13          Plaintiff underwent a CT scan of her abdomen and pelvis on September 30, 2004.  The

14  tests revealed no acute process in the abdomen, slight prominent lymph nodes adjacent to the

15  ascending colon, and a tiny fatty lesion in the right kidney that may be a small angiomyolipoma.

16  AR 372.

17          Plaintiff saw Nicole D. Esqueda, O.D., for complaints of blurred vision and eye fatigue

18  on October 13, 2004.  Dr. Esqueda found myopia with presbyopia in both eyes.  Her corrected

19  visual acuities were 20/20 in both eyes for distance and 20/30 in both eyes for near vision.

20  Plaintiff also had reduced visual fields.  AR 373.

21          ALJ's Findings

22          The ALJ determined that Plaintiff had the severe impairments of multiple transient

23  ischemic attacks by history, hypothyroidism with a goiter by history, and obesity.  He further

24  found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but

25  could not work overhead with her right upper extremity and had to avoid concentrated exposure

26  to unprotected heights or dangerous machinery.  Plaintiff could not return to her past relevant

27  work.  However, based on the testimony of the VE and the application of the Medical-Vocational

28

Guidelines, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy.  AR 24-25.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (a history of transient ischemic attacks, a history of hypothyroidism with a goiter, and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work, but  (5) retains the RFC to perform a significant number of jobs in the national economy.  AR 24-25.

Plaintiff contends that the ALJ (1) improperly discredited "laboratory findings and even physician's letter of examination;" and (2) failed to give her 15-20 minutes after the testimony to say what she "needed to say."[3]  Opening Brief, at 3.

## DISCUSSION

A.    The ALJ's Review of Evidence

From the arguments in the opening brief, it appears that Plaintiff contends that the ALJ discredited certain laboratory findings, such as her positive Epstein Barr virus test and a positive rheumatoid factor test.  She also faults the ALJ for discrediting her physicians.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if her impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).

At the second step of the sequential evaluation of disability, the ALJ reviews the evidence to determine whether a claimant has a severe impairment or combination of impairments.  An impairment or combination of impairments is found "not severe" and a finding of "not disabled"

---

[3] Plaintiff is proceeding pro se and the Court will therefore construe her pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027, n. 1 (9th Cir.1985).

10

1   is made at this step when medical evidence establishes only a slight abnormality or a

2   combination of slight abnormalities which would have no more than a minimal effect on an

3   individual's ability to work. even if the individual's age, education, or work experience were

4   specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his

5   or her physical or mental ability(ies) to perform basic work activities).  SSR 85-28.

6        In this case, the ALJ determined that Plaintiff had the severe impairments of multiple

7   transient ischemic attacks, by history, a history of hypothyroidism with goiter, and obesity.  AR

8   17.  He found the remainder of Plaintiff's alleged impairments (chest pain, Epstein Bar virus,

9   affective disorder, and fibromyalgia) to be non-severe.

10        Insofar as Plaintiff contends that the ALJ discredited the laboratory findings regarding her

11   Epstein Barr virus and rheumatoid factor (which she contends demonstrates that she has lupus),

12   the mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v.*

13   *Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  In other words, simply because Plaintiff may have

14   received positive test results does not necessarily mean that the ALJ will find the impairment

15   severe, or even disabling.  As explained above, to be found disabling, an impairment must

16   significantly limit the claimant's physical or mental ability to perform basic work activities for a

17   period of at least 12 months.

18        In reviewing Plaintiff's positive Epstein Barr virus results, the ALJ acknowledged the

19   positive test result and that she had been treated for the virus by Dr. Conanan.  AR 19.  He set

20   forth Dr. Conanan's statement to the California Employment Development Department that

21   Plaintiff was disabled for a one-year period, from December 15, 2003, through December 15,

22   2004.  AR 19, 325-326.  However, the ALJ properly discredited this opinion by explaining that it

23   was contradicted by numerous other doctors, including Dr. Stoltz, Dr. Ghafur and Dr. Nareddy.

24   AR 19-20, 264-268, 312-316, 378-379.  *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1195 (9th

25   Cir. 2004) (ALJ may discredit a treating physician's opinion it is "unsupported by the record as a

26   whole.") (citations omitted).  The ALJ also correctly explained that the ultimate issue of

27   disability is reserved for the Commissioner.  20 C.F.R. 416.927(e); *Nyman v. Heckler*, 779 F.2d

28   528 (9th Cir. 1985).  AR 20.

Moreover, the ALJ rejected Dr. Conanan's opinion because it was based on Plaintiff's self-reported history of Epstein Barr virus.  AR 19.  While objective testing revealed that Plaintiff did in fact have Epstein Barr virus, the ALJ discredited her subjective allegations as to the resulting symptoms and limitations.[4]  Indeed, Dr. Conanan believed that the projected ending date of Plaintiff's disability to be December 15, 2004, "per patient's report."  An ALJ may reject a treating physician's opinion because it was based on the claimant's discredited subjective complaints.  *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).

As to Plaintiff's argument that the ALJ discredited a positive rheumatoid factor test, a finding which she contends demonstrates that she has lupus, Plaintiff does not point to evidence to support this finding nor could the Court locate such evidence.  In any event, there is certainly no indication in the record that Plaintiff has lupus or any resulting limitations.  To the extent that Plaintiff specifically mentions, "strep throat/sores in mouth/open (bleeding) sores on skin/bronchitis/green infection between toes and hands," there is no evidence in the record, or her testimony, to support the existence of any of these conditions.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (complaints may be rejected when completely unsupported by medical evidence).[5]

Finally, insofar as Plaintiff argues that the ALJ improperly discredited her physicians' opinions, her argument fails.  Plaintiff does not elaborate on her argument other than to say that the ALJ is not entitled to determine the credibility of physicians, and that "this is what pastors are for...to judge morals."  However, contrary to Plaintiff's contention, it is the ALJ's *duty* to weigh the medical evidence and resolve the conflicts in the record.  *Magallanes v. Bowen*, 881 F.2d

---

[4] The ALJ gave a multitude of proper reasons for discrediting Plaintiff's allegations, a finding which Plaintiff does not challenge.  AR 21-23.

[5] In her reply, Plaintiff indicates that she is disabled by lupus and Epstein Barr virus, as well as hypothyroidism, extremely high cholesterol, irritable bowel syndrome, fibromyalgia, vertigo and heart disease.  She attaches an April 26, 2006, appeal to the Franchise Tax Board for a denial of her Renter's Assistance Claim, as well as additional medical records dated December 2003 through April 2004.  To the extent that these records were not presented to the ALJ or the Appeals Council, Plaintiff does not explain her failure to do so.  42 U.S.C. § 405 (g) (allowing for remand if the new evidence submitted is material, and there is good cause for the failure to incorporate it into the record).  In any event, it does not appear that the records add any significant information.

1   747, 750 (9th Cir. 1989).  So long as the ALJ gives specific and legitimate reasons,  supported by

2   substantial evidence, for rejecting the treating or examining physician's opinion, the Court will

3   uphold his findings.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

4   Although Plaintiff doesn't specify which opinions she contends were improperly

5   discounted, there are only a few doctors who opined that Plaintiff could not work, either

6   temporarily or for the required 12 month period.  For the reasons explained above, the ALJ

7   properly discredited Dr. Conanan's opinion that Plaintiff was disabled for a 12 month period.

8   Similarly, the ALJ rejected examining physician Dr. Stoltz's opinion that Plaintiff was

9   disabled for three months.  AR 19-20.  He explained that the opinion was based mainly on

10  Plaintiff's report, which the ALJ found to be less than credible.  AR 20.  *Thomas,* 278 F.3d at

11  957.  The ALJ further explained that he was not required to adopt the finding of disability, as that

12  issue is reserved for the Commissioner.  AR 20.  The ALJ also noted that, in any event, the

13  opinion expressed a time period which was less than the required 12 months.  AR 20.

14  Examining physician Dr. Wilson opined that Plaintiff, due to her personality disorder, age

15  of 46, and limited skills, would have a great deal of difficulty integrating into the work place.

16  AR 309-311.  The ALJ rejected this, however, explaining that his opinion was inherently

17  inconsistent.  First, Dr. Wilson did not diagnose a personality disorder, but rather diagnosed

18  histrionic personality traits.  AR 18.  Second, Plaintiff did not have limited skills, as she had

19  completed three vocational courses, in addition to college courses and her high school education.

20  AR 18.  Third, contrary to his finding that Plaintiff could not integrate into the work place, he

21  found that she could maintain attention and concentration, carry out one or two step, simple job

22  instructions, relate and interact with coworkers, supervisors and the general public, and carry out

23  an extensive variety of technical and/or complex instructions on a sustained basis.  AR 17-18,

24  309-311.  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a lack of supporting clinical

25  findings is a valid reason for rejecting a physician's opinion).  Finally, the ALJ explained that the

26  State Agency physician and reviewing psychiatrists found no severe mental impairment.  AR 18.

27  *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may reject opinions of disability

28  based on part on the testimony of a nontreating, nonexamining medical source).

The ALJ gave specific and legitimate reasons, supported by the record, for rejecting the above opinions.  Plaintiff's argument should be denied.

B.      Additional Time

In an unsupported and unexplained argument, Plaintiff simply states that she was not given 15-20 minutes after testimony to say what she needed to say.  She explains that she was scared and intimidated.

A review of the record reveals that at the beginning of the hearing, the ALJ asked Plaintiff if she had any objections to the evidence and allowed her to introduce additional records that she brought with her.  AR 412-413.  He asked her if she needed time to review her file, and she indicated that she did not.  AR 413.  After reviewing Plaintiff's alleged impairments, the ALJ asked Plaintiff if he had reviewed all of her impairments.  AR 434-345.  She said, "no," and then listed her additional alleged impairments: severe depression, edema, vertigo, heart arrhythmia, a kidney tumor and two cystic tumors in her left breast.  AR 435.  At the end of his questioning, the ALJ asked Plaintiff if there was anything else she wanted to tell him about her case.  AR 439.  She said, "yes," and offered clarifications of prior answers.  AR 439.  A few minutes later, the ALJ again asked Plaintiff if there was anything else she wanted to tell him, and Plaintiff responded with a description of her Epstein Barr virus and her belief that she contracted it from a shot given to her by the Sheriff's Department in 1993.  AR 440.  The ALJ again asked Plaintiff if there was anything else, and Plaintiff went on to explain her problems with Medi-Cal and an upcoming breast biopsy.  AR 440-441.  The ALJ asked if there was anything else, and Plaintiff responded, "That's it."  AR 441.

The ALJ also afforded Plaintiff more than one opportunity to include all of her alleged limitations in the hypotheticals posed to the VE.  AR 452.  Plaintiff responded by adding in numbness and paralysis on the right side of her body, "anxiety," and difficulties interacting with people.  AR 453-456.

Plaintiff's claim is simply belied by the transcript of the hearing, and should be denied.

1

**RECOMMENDATION**

2          Based on the foregoing, the Court finds that the ALJ's decision is supported by

3   substantial evidence in the record as a whole and is based on proper legal standards.

4   Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

5   of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

6   Defendant Jo Anne B. Barnhart and against Plaintiff Ruth Ann Hill.

7          These findings and recommendations will be submitted to the Honorable Anthony W.

8   Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

9   being served with these findings and recommendations, the parties may file written objections

10  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

11  and Recommendations."  The parties are advised that failure to file objections within the

12  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

13  F.2d 1153 (9th Cir. 1991).

14

15          IT IS SO ORDERED.

16      **Dated:    June 21, 2006**              **/s/ Dennis L. Beck**
3b142a                                    UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28